ULSTER OIL TRANSP. CORP.

v.

THE H. A. MELDRUM et al.

THE PETROLEUM NO. 7.

THE BRIDGEPORT.

No. A–19211.

United States District Court
E. D. New York.

July 9, 1954.

Macklin, Speer, Hanan & McKernan, New York City, proctors for libellant, by Martin J. McHugh, New York City, advocate.

Mahar & Mason, New York City, proctors for claimant-respondent, by Frank C. Mason, New York City, advocate.

Foley & Martin, New York City, proctors for claimant-impleaded, by James A. Martin and Warren J. Martin, New York City, advocates.

BYERS, District Judge.

On October 26, 1948, the libellant's steel barge Petroleum No. 7 in tow to the tug H. A. Meldrum was proceeding westerly through the Barge Canal and at about 1:00 A.M. was caused to rub along the bank on the starboard side and a stone described as about the size of a man's fist penetrated the bilge plate in the way of No. 5 tank, which is the damage sought to be recovered in this cause.

The tow was made up in push fashion and as such constituted a rigid unit.

The contact with the bank was caused by meeting and passing an eastbound tow similar in make-up, of which the steel tanker Hygrade No. 14 was being pushed by the tug Bridgeport, and clearance was effected by a matter of from two to three feet.

The question for decision is whether there was negligence on the part of The Meldrum in moving so close to the starboard bank as to cause the holing above referred to; and if such negligence has been shown, whether it can be visited in turn upon the navigation of The Bridgeport.

The evidence yields the following

### Findings of Fact.

1. The steel barge Petroleum No. 7, in tow to the tug H. A. Meldrum owned by the above-named claimant-respondent, sustained damage on October 26, 1948 at about 1:00 A.M., namely, her bilge plate, starboard side, in the way of tank No. 5 was punctured by a rock of about three inches in diameter while she was being towed push fashion, westward, at about one and one-half miles east of Lock 21 in the Barge Canal.

2. Until an eastbound tow, to be referred to in the next finding, was ob-

served, the speed of The Meldrum tow was about 3 to 3½ m. p. h.

3. A few minutes before the said striking, another tow was observed at a distance of about a thousand feet, approaching eastbound, and one-whistle signals were exchanged indicating the suggestion and acceptance of a port passing.

4. The eastbound tow consisted of the steel barge Hygrade No. 14, also being towed push fashion by the tug Bridgeport claimed by the respondent-impleaded.

5. The barge Petroleum No. 7 was 210 feet long, 40.5 feet in beam and depth of sides 15 feet. She was laden with a cargo of petroleum, and as so laden her draft was 11 feet.

6. The Hygrade No. 14 was 210.1 feet long by 42.1 feet in beam and her depth was 14.1 feet. She was not laden to capacity and carried water ballast so that her draft at the bow was 8½ feet and at the stern 9 feet.

7. The Meldrum was 77.8 feet long by 19.9 feet in beam and her draft was 10 feet.

8. The Bridgeport was 88.2 feet long by 23.1 in beam and her draft was 10.1 feet.

9. The striking on the part of The Petroleum No. 7 occurred in what is called a dug section of the Canal in the Rome level, where the course of the Canal is straight.

10. Weather conditions played no part in the occurrences here involved, and there was no current running in the Canal.

11. The westbound Meldrum tow left Lock 20 at 8:45 P.M. on October 25, 1948.

12. The eastbound Bridgeport tow left Lock 21 at 12:35 A.M. on October 26, 1948.

13. The distance between Locks 20 and 21 is 18 miles.

14. All four vessels were carrying proper lights which were showing.

15. In the vicinity of the place of striking, the Canal is 75 feet wide at the bottom and about 123 feet wide on the surface, and is 12 feet deep; the banks slope toward the center of the Canal so as to form an angle stated to be 26½ degrees, measured at the bottom of the Canal.

16. The top of the banks in this part of the Canal are composed of rip-rap in order to preserve the contour as nearly as possible.

17. Following the exchange of the one-whistle signals referred to in Finding No. 3, each tow was navigated to its starboard hand in order to overcome what appeared to each to be a head and head situation.

18. The Meldrum posted her deckhand as a lookout on The Petroleum No. 7 promptly following the exchange of one-whistle signals and he took a position about ten feet from the port bow of that barge and carried a flashlight which he used to signal to the navigator of The Meldrum as the respective tows approached.

19. At the same time The Meldrum slowed down to one bell, namely, a speed of about one to one and one-half m. p. h.

20. The course of The Meldrum having been directed to the starboard as stated, the lookout, when the tows were about 75 feet apart, signalled to the navigator of The Meldrum to go forward, thus arresting the starboard movement, but as the distance shortened that lookout thought he observed a tendency on the part of the Bridgeport tow to incline to its own port hand as though rectifying a too-extreme course to its own starboard, and he at once signalled to the navigator of The Meldrum to resume moving to its starboard to avoid what seemed to be danger of an imminent collision, and that movement was undertaken, whereupon the tows passed safely with a clearance of two to three feet, and as The Meldrum started again to its port there was a bump felt and heard by both the lookout and the navigator of The Meldrum.

21. The evidence establishes that the said bump was caused by the rock which penetrated the bilge plate referred to in Finding No. 1 and constitutes the only damage sustained by The Petroleum No. 7 on October 26, 1948.

22. The Bridgeport tow did not during the time in question encroach beyond her own starboard side of the Canal, namely, she did not move into the waters which lay in the northerly half of the Canal.

23. The navigation of The Meldrum was conducted in the realization that her cargo required that every precaution be taken to avoid a collision with the eastbound tow.

24. It is customary for barges having a beam of 40 feet or slightly in excess thereof, in navigating through dug parts of the Canal, to rub along the bank on the starboard hand when passing other tows, and but for the presence of the three-inch rock which caused the damage in this case, no injury would have been suffered by The Petroleum No. 7 in the stated circumstances.

25. The navigation of The Meldrum was not negligent.

26. The navigation of The Bridgeport was not negligent.

### Conclusion of Law.

The libel must be dismissed with costs, and also the impleading petition, likewise with costs.

### Comment.

██ It must be obvious to the owners and operators of barges having a beam of 40 feet or slightly more, and drawing as much as 11 feet of water, that navigation in the Barge Canal is attended by certain obvious perils, particularly when the Canal is not more than 12 feet deep in the Fall of the year. The testimony is that in the Spring it exceeds that figure.

The testimony of the witnesses called for The Meldrum was convincing as to all incidents of the passing, and Shobah, the deckhand who is not in the employ of the owner of The Meldrum, was particularly informing, and all that was revealed in what these two witnesses deposed impressed the Court as the conduct of men who were alert to their duties and who exercised the best of judgment in the handling of their tow.

██ It is familiar law that a tug is not a bailee, and when reasonable care and the requisite skill are brought to bear in the towage services, the burden is on the towed vessel to establish negligence on the part of the tug.

██ The Court is equally satisfied that The Bridgeport tow did not encroach upon the waters in which the other tow was required to navigate, for the following reasons: The entry in The Meldrum's log was consistent with the foregoing statement since it read as follows:

"October 26, 1948. At one a. m. went on bottom approximately 1½ east of Lock 21. Made hole in No. 5 starboard tank."

Obviously if there had been an awareness of an opportunity to assert that The Bridgeport's navigation was responsible for the happening, a log entry would have been a convenient medium of expression.

Again, since The Petroleum No. 7, according to the testimony of the witness Bagger, would have occupied the entire space between the center of the Canal and the bank and there having been no collision, it necessarily follows that the eastbound tow did not encroach into The Meldrum's waters, and this was true even though the lookout on The Petroleum No. 7 may have anticipated the contrary from what he thought he observed of the movements of The Bridgeport tow.

The following cases have been consulted: Byrnes-Olive K, 1932 A.M.C. 481; Oil Transfer etc. v. Celtic, 1946 A.M.C. 1713; Scipio, 1938 A.M.C. 1207.

Settle decree in accordance with the conclusion of law.